# In the United States Court of Federal Claims

No. 13-779 C

Filed: December 15, 2014

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| CILICIA A. DeMONS, *et al.*, on behalf of herself and all others similarly situated, Plaintiffs, v. THE UNITED STATES, Defendant. | Motion For Class Certification, RCFC 23; Government Employees, 5 U.S.C. § 2105(a), 5 U.S.C. § 6301(2), 38 U.S.C. § 7454(b)(3). |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Ira M. Lechner**, Law Office of Ira M. Lechner, Escondido, California, Counsel for Plaintiffs.

**Hillary A. Stern**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

### MEMORANDUM OPINION AND ORDER REGARDING CLASS CERTIFICATION

**BRADEN**, *Judge*.

This Memorandum Opinion And Order resolves Plaintiffs' September 16, 2014 Motion For Approval Of Class Certification, pursuant to Rule 23 of the Rules of the United States Court of Federal Claims ("RCFC 23").

**I.   RELEVANT FACTS.[1]**

Plaintiffs[2] (herein described as "Plaintiffs" or the "DeMons Plaintiffs") are current or former General Schedule ("GS") employees of the United States Department of Veterans Affairs ("VA"). Compl. ¶ 2. Employees covered by this proposed class action are "all civil service employees . . . employed by the VA excluding only '[] a physician, dentist, or nurse in the

---

[1] The relevant facts are derived from the January 29, 2010 Complaint in *Adams v. United States*, No. 10-60 ("Adams Compl.") and the October 8, 2013 Complaint ("Compl.") in the present case.

[2] All references to "Plaintiffs" or "DeMons Plaintiffs" refer to the seven named plaintiffs in Exhibit 1 of Plaintiffs' October 8, 2013 Complaint.

Veterans Health Administration of the Department of Veterans Affairs.'"  Compl. ¶ 18 (citing 5 U.S.C. § 6301(2)).  These employees "were or are employed by the VA as [health care workers] since July 1, 2012."  Compl. ¶ 9.  Since July 1, 2012, Plaintiffs have received "additional pay," pursuant to 38 U.S.C. § 7454(b)(3),[3] in the amount of 25% of their regular hourly wages, for work performed on Saturdays, but not Sundays.  Compl. ¶ 14.  Plaintiffs also have not received "additional pay" when they have taken or used authorized and accrued "paid leave"[4] for similar shifts, including Saturday hours, but not Sunday hours.  Compl. ¶ 19.  When using authorized and accrued "paid leave" for such shifts, Plaintiffs have been compensated only for their regular pay.  Compl. ¶ 19.

## II.  PROCEDURAL HISTORY.

On January 29, 2010, Lisa Adams *et al.* ("Adams Class") filed a Class Action Complaint For Money Damages in the United States Court of Federal Claims alleging that they had been wrongfully deprived of "additional pay" to which they were entitled, pursuant to 38 U.S.C. § 7454(b)(3).  Adams Compl. ¶¶ 33–34.  On the same date, the Adams Class also filed a Motion For Class Certification, pursuant to RCFC 23, seeking certification of a class designating Plaintiffs, as class representatives and individuals that meet the following requirements:

> All General Schedule ("GS") employees as defined by section 2105 of Title 5 who were not included in the class certified in [*Curry v. United States*, 81 Fed. Cl. 328 (2008)], and who were employed from January 1, 2004 or thereafter by the Department of Veterans Affairs ("VA") in the Veterans Health Administration ("VHA") as one of the following occupations:
>
> (1) [specified positions][5]; and
>
> (2) who regularly and customarily worked on a tour of duty any part of which was within the period beginning midnight Friday and ending midnight Saturday[6] (which did not include any Sunday hours); and

---

[3] 38 U.S.C. § 7454(b)(3) states:

> Employees appointed under section 7408 of this title performing service on a tour of duty, any part of which is within the period commencing at midnight Friday and ending at midnight Sunday, shall receive additional pay in addition to the rate of basic pay provided such employees for each hour of service on such tour at a rate equal to 25 percent of such employee's hourly rate of basic pay.

38 U.S.C. § 7454(b)(3).

[4] "Paid leave" accrues and is governed by the provisions and formulas referenced in 5 U.S.C. Chapter 63.

[5] Representative positions include: Biological Science Technician, Rehabilitation Therapy Assistant, Medical Technician, Environmental Health Aid and Technician, and Physical Science Technician.  Adams Compl. ¶ 19.

(3) who received premium pay of 25% or more pursuant to 38 U.S.C. § 7454(b)(3) for each such hour of service between midnight Friday and midnight Saturday; and

(4) whose "pay" during periods of authorized paid leave pursuant to Chapter 63 of Title 5 for any part of such tour of duty from midnight Friday to midnight Saturday (which did not include any Sunday hours) was reduced in amounts equal to the Saturday premium pay pursuant to 38 U.S.C. § 7454(b)(3) to which such employees would have been paid had they performed their regular and customary work on Saturdays instead of using authorized paid leave.

Adams Compl. ¶ 19.

On June 18, 2010, the court issued a Memorandum Opinion And Order certifying the Adams Class. *See Adams v. United States*, 93 Fed. Cl. 563, 578 (2010) (defining the relevant class as current or former VHA employees in specific occupations who customarily work on Saturdays, but receive only basic pay when they elect to use authorized accrued "leave with pay"). On August 11, 2010, the court issued an Order approving the Adams Class's July 22, 2012 Proposed Class Action Notices.

On September 29, 2010, the Adams Class filed a Motion For Partial Summary Judgment As To Liability. On November 22, 2010, the Government filed a Cross-Motion For Summary Judgment. On June 30, 2011, the court granted the Adams Class's Motion and denied the Government's Cross-Motion.

On October 11, 2012, the court approved the parties' settlement that required the Government to pay the Adams Class $4,929,882.00, plus attorney's fees, non-taxable costs, and administration expenses. On October 15, 2012, the court entered a final order for judgment.

On October 8, 2013, the Plaintiffs in this case ("DeMons Plaintiffs") filed a Complaint in the United States Court of Federal Claims seeking "recovery of back pay and interest on behalf of the class of present and former employees of the VA who regularly and customarily received Saturday premium pay in the form of 'additional pay' pursuant to section 7454(b)(3) since July 1, 2012." Compl. ¶ 1. The DeMons Plaintiffs that were employed prior to July 1, 2012 also were members of the certified class in *Adams*. In addition, the *DeMons* Complaint alleges the same violations as the *Adams* Complaint. Compl. ¶ 1 ("[B]eginning July 1, 2012 and continuing thereafter, [the Government] has failed again to include Saturday Premium Pay in the pay for authorized and accrued annual leave, sick leave and other paid leave, of health care workers who used such authorized paid leave instead of performing 'a tour of duty' on Saturdays."). Thus, the DeMons Complaint mirrors the essential allegations in *Adams*, with the difference being that *Adams* covered violations only through July 1, 2012. The DeMons Plaintiffs seek the same relief for the same violations that have occurred since July 1, 2012.

---

[6] By "midnight Saturday," the court assumes the Complaint means 12:00 a.m. Sunday.

On January 29, 2014, the Government filed its Answer.

On September 16, 2014, the DeMons Plaintiffs filed a Motion For Approval Of Class Certification ("Pl. Mot."). On October 2, 2014, the Government filed a Response ("Gov't Resp."). On October 14, 2014, the DeMons Plaintiffs filed their Reply ("Pl. Reply").

### III. DISCUSSION.

#### A. Jurisdiction.

The Tucker Act provides that the United States Court of Federal Claims has jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2006). The Tucker Act, however, does not, by itself, confer jurisdiction on the court. *United States v. Testan*, 424 U.S. 392, 398 (1976) ("The Tucker Act, of course, is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. The Court of Claims has recognized that the Act merely confers jurisdiction upon it whenever the substantive right exists."). Therefore, a plaintiff must identify an independent basis by way of a contract, federal statute, regulation, or the Constitution upon which it is entitled to monetary payment from the federal government. *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983) ("The claim must be one for money damages against the United States and the claimant must demonstrate that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.") (internal citations omitted); *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) ("[I]n order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages. In the parlance of Tucker Act cases, that source must be money-mandating.") (internal citations and quotations omitted).

In determining whether the United States Court of Federal Claims has jurisdiction over a claim, the trial court has been instructed that "at the outset [the court] shall determine . . . whether the Constitutional provision, statute, or regulation is one that is money-mandating. If the court's conclusion is that the Constitutional provision, statute, or regulation meets the money-mandating test, the court shall declare it has jurisdiction over the cause, and shall then proceed with the case in the normal course." *Fisher*, 402 F.3d at 1173.

In this case, the October 8, 2013 Complaint alleges that Plaintiffs and those similarly situated, have been wrongfully deprived of additional pay when taking authorized paid leave for shifts, including Saturday, but not Sunday hours, in violation of 38 U.S.C. § 7454(b)(3). Compl. ¶¶ 4–5. As such, the October 8, 2013 Complaint properly identified and pled an independent right to money damages to satisfy the court's jurisdictional requirements. In the March 24, 2014 Joint Preliminary Status Report, the Government advised the court that it "currently has no basis upon which to question [the court's] jurisdiction." 3/24/14 JPSR at 1.

### B.     Standard Of Review On A Motion For Class Certification.

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Califano v. Yamasaki*, 422 U.S. 682, 700–01 (1979)). Class actions in the United States Court of Federal Claims are governed by RCFC 23 that provides:

> (a) Prerequisites.  One or more members of a class may sue as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> (b) Class Actions Maintainable.  A class action may be maintained if RCFC 23(a) is satisfied and if . . . (2) the United States has acted or refused to act on grounds generally applicable to the class; and (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by class members; . . . and (D) the likely difficulties in managing a class action.

RCFC 23(a), (b).

RCFC 23 is modeled after Federal Rule of Civil Procedure ("FRCP") 23.  RCFC 23, United States Court of Federal Claims Rules Committee ("Rules Committee") Notes (2002 Revision).[7] The United States Court of Federal Claims, however, has held that RCFC 23 differs from FRCP 23 in two important respects: "(1) [RCFC 23] has been modified to reflect the court's jurisdiction, in particular, the narrow circumstances in which the court will afford declaratory or injunctive relief, and (2) it allows only 'opt-in,' but not 'opt-out,' class actions." *King v. United States*, 84 Fed. Cl. 120, 122 n.2 (2008); *see also Bright v. United States*, 603 F.3d 1273, 1284 (Fed. Cir. 2010) (referencing the "opt-in procedure of RCFC 23").[8]  Accordingly, "unidentified

---

[7] Accordingly, the United States Court of Federal Claims has relied on other federal court decisions to construe RCFC 23.  *See Haggart v. United States*, 89 Fed. Cl. 523, 529 (2009) ("[C]ases applying [FRCP 23] have been examined and followed in interpreting RCFC 23."); *see also Barnes v. United States*, 68 Fed. Cl. 492, 494 n.1 (2005) ("Owing to the fact that the language of RCFC 23 and [FRCP] 23 is, in many regards, identical, this opinion relies upon numerous decisions that have construed the relevant portions of the latter rule.").

[8] According to the United States Court of Federal Claims, an opt-in class action "allows each of the unnamed members of the class the opportunity to appear and include themselves in the suit if each is willing to assume the risks of the suit.  This approach resembles permissive

claimants are not bound if the case should be ruled in the defendant's favor."[9]  *Buchan v. United States*, 27 Fed. Cl. 222, 223 (1992).

The criteria set forth in RCFC 23(a) and (b) "can be grouped into five categories: (i) **numerosity**—a class so large that joinder is impracticable; (ii) **commonality**—in terms of the presence of common questions of law or fact, the predominance of those questions, and the treatment received by the class members at the hands of the United States; (iii) **typicality**—that the named parties' claims are [typical] of the class; (iv) **adequacy**—relating to fair representation; and (v) **superiority**—that a class action is the fairest and most efficient way to resolve a given set of controversies." *Barnes,* 68 Fed. Cl. at 494 (bolded in original) (citing *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 161 (1982) (regarding Fed R. Civ. P. 23(a), (b))). Since these requirements are in the conjunctive, failure to satisfy any one "is fatal to a motion for class certification." *Testwuide v. United States*, 56 Fed. Cl. 755, 761 (2003).

For this reason, "the party moving for class certification bears the burden of establishing, by a preponderance of the evidence, the requirements set forth in RCFC 23." *Rasmuson v. United States*, 91 Fed. Cl. 204, 210 (2010); *see also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78 (1974) (holding that the relevant inquiry on a motion for class certification is not "whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of the class action rule are met"). Bare allegations do not satisfy a plaintiff's burden under RCFC 23.

Therefore, in this case, the court is required to conduct an analysis to determine if the prerequisites of RCFC 23 have been satisfied by a preponderance of the evidence. *See Falcon,* 457 U.S. at 161 (holding that class actions "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied"). This analysis requires the court to "make the factual and legal inquiries necessary to ensure that class certification is appropriate." *Christopher Vill. v. United States*, 50 Fed. Cl. 635, 642 (2001).

### C. Plaintiffs' September 16, 2014 Motion For Class Certification.

#### 1. Plaintiffs' Argument.

Plaintiffs argue that the court granted class certification in *Adams v. United States*, 93 Fed. Cl. 563 (2010) to the same putative class that is the subject of the litigation. Pl. Mot. at 2. Here, the putative class "is, or has been, employed since July 1, 2012 in precisely the same VHA health care occupations which are identified in *Adams*." Pl. Mot. at 2. "[S]ince July 1, 2012, the VA has not paid these employees the same 25% Saturday premium pay when they used accrued and authorized paid leave on Saturdays as when they were paid for working their customary and regular scheduled Saturday shifts." Pl. Mot. at 2–3. Further, both the proposed Summary

---

joinder in that it requires affirmative action on the part of every potential plaintiff." *Buchan v. United States*, 27 Fed. Cl. 222, 223 (1992).

[9] In contrast, in an opt-out class, "members may choose to exclude themselves if they do not want to be bound by the decision or settlements reached in the case." BLACK'S LAW DICTIONARY 284 (9th ed. 2009).

Postcard Class Notice and Official Court Notice are "precisely the same" as the ones approved in *Adams*. Pl. Mot. at 3. Both notices also contain website information and a phone number for VA employees to file their claims. Pl. Mot. at 3.

Therefore, Plaintiffs assert that "there is no legitimate defense to the prompt certification of the class in this case. Simply stated, there are no disputed facts and no bar to the same class certification as in *Adams*." Pl. Mot. at 5. Plaintiffs also ask the court to order the Government "to produce the names and last known home addresses of all putative class members to the appointed Class Action Administrator within two weeks of the court's approval of class certification inasmuch as the VA knows, or already is in the process of identifying who is owed back pay." Pl. Mot. at 5.

### 2. The Government's Response.

The Government responds that the history of class certification cases in the United States Court of Federal Claims includes a "substantial discussion about whether class actions are disfavored." Gov't Resp. at 6. Both the history of RCFC 23 and subsequent case law "establish that the application of the rule should be reserved for extraordinary cases and that its use generally is disfavored." Gov't Resp. at 7 (citing *O'Hanlon v. United States*, 7 Cl. Ct. 204, 206 (1985)). Specifically, the United States Court of Federal Claims traditionally disfavors using class actions to litigate the rights of Government employees. *See Armitage v. United States*, 18 Cl. Ct. 310, 315 (1989) ("[T]he Court of Claims taught that the test case, brought by one of a few plaintiffs, has been the traditional method of litigating the rights of Government employees in this Court.") (internal quotation marks and citation omitted); *see also Kominers v. United States*, 3 Cl. Ct. 684, 685 (1983) (holding that, in civilian pay cases, "class certification should receive skeptical consideration").

As to RCFC 23(a)(1), the Government concedes that the proposed class is numerous, but calls it "unmanageable." Gov't Resp. at 10. The "vague and overly broad [class] definition" makes it too difficult to identify proposed class members. Gov't Resp. at 10. Moreover, there are 156 geographically dispersed facilities nationwide that might employ potential class members. Gov't Resp. at 10.

Therefore, under RCFC 23(a)(2), "[P]laintiffs' proposed class neither presents any common questions of law or fact nor do any common questions predominate." Gov't Resp. at 4. The Government distinguishes this case from *Adams*, stating:

> In *Adams*, the [c]ourt was required to resolve a common legal issue involving the proper interpretation of the statute upon which [P]laintiffs based their claim. Because the [c]ourt made that determination in *Adams*, no common issues remain for the Court to decide in this case; all issues as to both liability and damages require individual proofs.

Gov't Resp. at 4.

As such, Certifying this class would result in the court "fac[ing] either thousands of different presentations of proof concerning whether each individual class member was properly paid for leave, or alternatively, the class members [being] precluded from raising individual arguments." Gov't Resp. at 13. The United States Court of Federal Claims requires each plaintiff "to provide sufficient bases for determining the damages sought." Gov't Resp. at 14 (citing *Willems Indus., Inc. v. United States*, 155 Ct. Cl. 360, 376 (1961) ("The claimant bears the burden of proving . . . the amount of loss with sufficient certainty so that the determination of the amount of damages will be more than mere speculation.")). The Government claims that each individual plaintiff would have to prove that he or she "was regularly scheduled to work on Saturdays," his or her work status for each holiday, and how much leave was actually taken. Gov't Resp. at 14.

Regarding RCFC 23(a)(3), the Government also asserts that the named Plaintiffs' claims are not typical of the potential class's claims. Gov't Resp. at 15. "Each of the positions that [P]laintiffs propose to include in their proposed class necessarily requires the performance of different duties and functions than another position and, therefore, by definition, cannot be typical." Gov't Resp. at 15. Individual determinations of leave taken and hours worked defeats typicality. *Cooke v. United States*, 1 Cl. Ct. 695, 699 (1983) ("[T]he existence of common legal issues should be given little weight in comparison to factual issues. . . . [T]he facts remaining in dispute[] are likely to be dissimilar since they concern status and damage questions particular to each claimant."); *Christian v. United States*, 46 Fed. Cl. 793, 816 (2000) ("Plaintiff's claim turns on his particular circumstances—his career field, skill, and, notably, his military record."). Moreover, the 156 different facilities may have different policies and practices. Gov't Resp. at 15–16.

As to RCFC 23(a)(4), the Government doubts the named Plaintiffs' ability to fairly and adequately protect the interest of the class. Gov't Resp. at 16. Only seven individuals are named Plaintiffs, and they work at only three of the 156 potential facilities. Gov't Resp. at 16. "There is no basis for [P]laintiffs' assumption that other potential class members have a desire to join in the filing of this suit at this time," because they might want to file their own suits later or join this suit as named Plaintiffs under RCFC 20(a). Gov't Resp. at 16. "[S]even [P]laintiffs seek to prosecute the claims of an unnamed group purportedly in excess of 1,000 individuals in a vast variety of job positions located at numerous different facilities. Plaintiffs have failed to make any showing that they can fairly and adequately represent the interests of the vast and dissimilar class they seek to represent." Gov't Resp. at 17.

The Government adds that "[b]ecause each employee, individually, would be required to establish entitlement to unpaid Saturday pay for leave or holiday time, a class action is not a superior case management tool" under RCFC 23(b). Gov't Resp. at 18.[10]

Finally, the Government argues that if the court certifies the class, "[P]laintiffs' proposed Order, Official Notice, Postcard Notice, and Joint Stipulated Protective Order suffer from certain defects." Gov't Resp. at 18. The proposed Order fails to specify the relevant statutes; the

---

[10] The Government, however, does not provide a single citation to support this argument. *See* Gov't Resp. at 18.

8

Official Notice misstates the Government's legal position and relevant law; and the Joint Stipulated Protective Order is erroneously captioned. Gov't Resp. at 18–19.

### 3. Plaintiffs' Reply.

Plaintiffs reply that they satisfy RCFC 23(a)(2)'s commonality requirement, as they can establish the common question of fact—whether the Government "has failed to pay a large class of employees Saturday premium pay when they used paid leave"—by algorithmic computer analysis. Pl. Reply at 2. Similarly, they can use computer analysis to determine how much back pay is owed to each opt-in Plaintiff. Pl. Reply at 2–3. Plaintiffs dispute the Government's argument that because it concedes liability, there are no common questions for the court to decide. Pl. Reply at 3–4. The Government's "opposition in *Adams*, however, was virtually identical, word for word and page for page, to its argument in *DeMons*." Pl. Reply at 4.

Plaintiffs also contend that the class in this case would be manageable, because the *Adams* administrator already has issued more than 8,000 checks to more than 10,000 eligible opt-in claimants. Pl. Reply at 4.

As to the class notices, the court approved precisely the same notices in *Adams*. And, the *Adams* notices were successful, because 10,436 claim forms were filed, mostly online. Pl. Reply at 4. Plaintiffs also addressed typographical errors in the Official Notice.[11]

### D. The Court's Resolution.

As a threshold matter, class actions are not "disfavored" in the United States Court of Federal Claims. *See Filosa*, 70 Fed. Cl. at 611 ("[C]lass actions are not disfavored by the United States Court of Federal Claims."). Although some language to that effect appeared in *O'Hanlon*, 7 Cl. Ct. at 206, it was "premised merely on the fact that class actions were not frequently certified in this court." *Taylor v. United States*, 41 Fed. Cl. 440, 444 (1998). Moreover, even "[i]f the proposition that class actions are 'disfavored' ever was valid, it certainly is no longer so now." *Barnes*, 68 Fed. Cl. at 502.

For the reasons discussed herein, the court has determined that Plaintiffs have satisfied all of the RCFC 23 requirements for class action certification.

### 1. The Proposed Class Satisfies The "Numerosity Requirement."

---

[11] Plaintiffs attached a revised Official Notice to their Reply that: deleted Series 0621, Nursing Assistant, due to change in law; updated the Administrator's mailing address, phone number, and website; deleted the paragraph that stated the Government did not believe the class is entitled to Saturday premium pay when they use authorized leave; but retained the paragraph in the "Basic Information" section that "states Plaintiffs' argument with respect to the entitlement to the same premium pay when an employee uses paid leave as when he or she works the same regularly scheduled Saturday shift." Pl. Reply at 5. Plaintiffs also corrected the caption in the Joint Protective Order. Pl. Reply at 6.

RCFC 23(a)(1) requires a proposed class be so numerous that joinder of all members is impracticable. RCFC 23(a)(1). Here, Plaintiffs have alleged a potential class in excess of 1,000 members, a figure not challenged by the Government. Compl. ¶ 20; *see also* Gov't Opp. at 10 (conceding that "the proposed class may be numerous"). This is sufficient to satisfy the numerosity requirement. *See King*, 84 Fed. Cl. at 124 (holding that 152 putative class members satisfied the numerosity prong); *see also Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) ("[The] sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1).").

For these reasons, the court has determined that RCFC 23's "numerosity requirement" has been satisfied.

### 2. The Proposed Class Satisfies The "Commonality Requirement."

The "commonality requirement" entails three inquiries: (1) whether there are "questions of law or fact common to the class"; (2) whether the "United States has acted or refused to act on grounds generally applicable to the class"; and (3) whether those common questions "predominate over any questions affecting only individual members." RCFC 23(a)(2), (b)(2), (b)(3).

#### a. A Question Of Law Or Fact Common To The Class Exists.

RCFC 23(a)(2) requires that there be "questions of law or fact common to the class." RCFC 23(a)(2). The threshold of commonality is met, "when there is at least one issue whose resolution will affect all or a significant number of the putative class members." *Fisher,* 69 Fed. Cl. at 200. This threshold, however, is "not high." *Jenkins v. Raymark Indus.*, 782 F.2d 468, 472 (5th Cir. 1986). In this case, unlike in *Adams*, the Government concedes that the potential class members are entitled to overtime pay. Gov't Resp. at 13 ("That legal question has now been resolved."). But, the resolution of the legal question in *Adams* does not negate commonality in *DeMons*.

This case analogous to *Curry v. United States*, 81 Fed. Cl. 328 (2008) that dealt with similar overtime pay issues. In that case, just as in this one, "the [G]overnment argue[d] that because the Court ha[d] already resolved the liability issues in this case, there [were] no common issues remaining for the Court to decide." *Id.* at 333 (internal quotation marks omitted). Nevertheless, the *Curry* court held:

> [I]n deciding whether common questions predominate over individual questions for purposes of class certification, it does not matter whether the common questions have already been summarily adjudicated. If the rule were otherwise, in the future no plaintiffs would ever agree to postpone the determination of a class certification motion until after a motion for partial summary judgment were decided, due to the [Government's] 'heads I win, tails you lose' result. . . . The Court concludes that common questions remain, and are not reduced in stature, after they have been ruled upon via summary judgment.

10

*Id.* at 334.

In the court's judgment, the legal issue in this case was resolved by an Order Granting Plaintiff's Motion For Partial Summary Judgment. *See Adams*, Case No. 10-60, Docket No. 41, at 12 (June 30, 2011) ("[T]he court has determined that sections 7454(b)(3) and 7453(c) of title 38 authorize Class Plaintiffs to receive 'premium pay' while working, and do not prohibit VHA employees who elect to use authorized accrued 'leave with pay' on Saturdays from being compensated 'premium pay' for that time."). As the court noted in *Adams*, "[t]he Government's arguments in this case previously were considered and rejected by the *Curry* court." *Adams*, Case No. 10-60, Docket No. 41, at 13. Although neither *Curry* nor *Adams* is precedential, both are persuasive. In this case, as the court previously has observed, the summary adjudication of a common legal issue should not defeat class certification when that issue binds over a thousand plaintiffs seeking redress for a common grievance. *See Barnes*, 68 Fed. Cl. at 496–97 (finding commonality when the "lawsuit challenges a system-wide practice or policy that affects all of the putative class members" and noting that "case law suggests that a defendant may not thwart class certification by making tactical concessions designed to pare down the list of common issues held by the putative class members") (internal quotation marks and citations omitted).

For these reasons, the court has determined that there is a common question of law applicable to the class.

### b. The Common Question Predominates Over Questions Affecting Individual Members.

RCFC 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." RCFC 23(b)(3). In this case, the common question is whether each putative class member has been affected by the same Government policy. Therefore, individual damages can be decided using computerized pay records. Although the Government has argued that the determination of damages will have to be established on an individual basis (Gov't Opp. at 14), Plaintiffs have satisfied the court that such determinations can be made using a centralized, computerized system under the Government's control. Pls. Reply at 2–3. Moreover, despite the Government's arguments to the contrary, "[t]he mere fact that damage awards will ultimately require individualized fact determinations is insufficient, by itself to defeat a class action." *Curry*, 81 Fed. Cl. at 334 ("[W]here the government's alleged failure to comply with the Federal pay statutes is systematic and long-standing, that issue plainly is more substantial than—and thus predominates over—the relatively straightforward calculation issues associated with determining the hours and amounts of premium pay to which each putative class member may be entitled.") (internal citations omitted).

In addition, the Government's reliance on *Gaffney v. United States*, 834 F. Supp. 1 (D.D.C. 1993) is misplaced. Gov't Opp. at 12–13. That case declined to certify a class under FRCP 23(b)(3)—a rule similar to RCFC 23(b)(3). The *Gaffney* court determined that "common questions do not 'predominate in this case. Rather, there is only a single common question: the [G]overnment's liability for Sunday premium pay on days when employees take paid leave. That issue, moreover, has been resolved in . . . the Court of Appeals for the Federal Circuit."

11

*Gaffney*, 834 F. Supp. at 6. The *Gaffney* court also expressed concerns about notifying the class proposed and managing the opt-out procedures. *Id.*

In more recent cases, the United States Court of Federal Claims has declined to follow *Gaffney*. In 2005, *Barnes* certified a class even though "the [Government] agrees that employees covered by the statutes cited by plaintiffs should receive premium pay in the general circumstances alleged." 68 Fed. Cl. at 497. Then, in *Curry* a class was certified, even though the question of liability had already been summarily adjudicated. *See* 81 Fed. Cl. at 334. Moreover, RCFC 23 allows only opt-in actions; therefore, *Gaffney*'s concerns about managing opt-out procedures are not present here. *See King*, 84 Fed. Cl. at 122 n.2; *see also Bright*, 603 F.3d at 1284.

For these reasons, the court has determined that the common question predominates over questions affecting individual members.

### c. The United States Has Acted On Grounds Generally Applicable To The Class.

A class action also may only be maintained where "the United States has acted or refused to act on grounds generally applicable to the class." RCFC 23(b)(2). In this case, Plaintiffs allege a systematic government policy of withholding additional premium pay from an entire class of individuals who have taken paid leave for Saturday shifts that would ordinarily entitle them to 25% premium pay. Pl. Mot. at 2–3. Given that the common question involves a systematic government policy, Plaintiffs have satisfied the court that the United States has acted on grounds generally applicable to the class.

For these reasons, the court has determined that RCFC 23's "commonality requirement" has been satisfied.

### 3. The Proposed Class Satisfies The "Typicality Requirement."

In addition, RCFC 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." RCFC 23(a)(3). The threshold for typicality also is "not high." *Fisher*, 69 Fed. Cl. at 200 ("[E]ven if some factual differences exist between the claims of the named representatives and the claims of the class, [the typicality requirement may be satisfied] provided that the named representatives' claims share the same essential characteristics as the claims of the class at large."). Here, the "essential characteristic" of Plaintiffs' claim is that the Government is liable for Saturday additional pay when specified employees use paid leave. Compl. ¶ 1. This claim, as well as the Government's potential defenses, is characteristic both of the class representatives and all potential class members. In fact, as Plaintiffs point out, the Government's October 2, 2014 Opposition is "virtually identical, word for word and page for page," as its March 17, 2010 Opposition in *Adams*. Pl. Reply at 4. Other factual differences, such as different job duties, different leave schedules, and different places of employment, are "inconsequential." *Barnes*, 68 Fed. Cl. at 498–99 ("[I]t is assumed that individual questions peculiar to individual class members, but overweighed by the common questions, will or may remain after the common questions have been finally determined.")

(internal quotation marks and citation omitted); *see also Curry*, 81 Fed. Cl. at 335–36 (holding that the common question of the Government's liability regarding back pay satisfied the typicality requirement, despite the geographical distribution of class members, different job descriptions and leave schedules, and different employment facilities).

For these reasons, the court has determined that the proposed class satisfies the "typicality requirement" of RCFC 23(a)(3).

### 4. The Proposed Class Satisfies The "Adequacy Requirement."

RCFC 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." RCFC 23(a)(4). The "adequacy requirement" has two components. First, class counsel must be "qualified, experienced and generally able to conduct the litigation." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) (internal quotation marks omitted). Second, "the class members must not have interests that are 'antagonistic' to one another." *Id.*

The Government does not challenge the fact that Plaintiffs' proposed class counsel, Mr. Ira M. Lechner, is qualified to conduct the litigation. The Government, however, does contest whether Plaintiffs can adequately represent the interests of the proposed class. Gov't Opp. at 16–17. The Government suggests that prospective members may not wish to opt-in to the class, and implies that Plaintiffs' interests might diverge from those of the class, given their varied job duties and locations. Gov't Opp. at 16–17. Nevertheless, the Government has not proffered any evidence to this effect. Therefore, the court sees no reason to doubt that Plaintiffs' interests do not conflict with the class. *See Curry*, 81 Fed. Cl. at 337 ("[The Government] speculates that prospective members may not wish to opt into the class, and implies that plaintiffs cannot represent employees of more than 300 different facilities of at least half a dozen different types. But plaintiffs have alleged that they do not have interests antagonistic to, or in conflict with, the class, and defendant has not identified any reason to believe this is not the case.") (internal quotation marks and citations omitted).

The Government also argues that public policy and "the principle of limitations upon representative claims" weigh against class certification with so many unnamed and potentially uninterested individuals. Gov't Opp. at 16–17. The opt-in requirements of RCFC 23, however, mitigate these concerns by forcing potential class members affirmatively to join the class and thereby demonstrate at least minimal knowledge of and interest in the litigation. *See Buchan*, 27 Fed. Cl. at 223 (noting that the opt-in "approach resembles permissive joinder in that it requires affirmative action on the part of every potential plaintiff").

For these reasons, the court has determined that the "adequacy requirement" of RCFC 23(a)(4) has been satisfied.

### 5. The Proposed Class Satisfies The "Superiority Requirement."

RCFC 23(b)(3) states "that a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." RCFC 23(b)(3). This requirement

13

encompasses the advantage to prospective class members of litigating their own claims, the risk of inconsistent adjudications should multiple actions be pursued, and the court's conceivable difficulties in managing the class action. *Fauvergue* v. *United States*, 86 Fed. Cl. 82, 101 (2009), *rev'd on other grounds by Bright*, 603 F.3d 1273 (Fed. Cir. 2010); *see also Quinault Allottee Ass'n & Individual Allottees v. United States*, 197 Ct. Cl. 134, 140 (1972) (considering whether the "claims of many allottees are so small that it is doubtful that they would be pursued other than through this case"). The "superiority requirement" is met when "a class action would achieve economics of time, effort, and expenses, and promote uniformity . . . without sacrificing procedural fairness or bringing about other undesirable results." FRCP 23, Advisory Committee Notes (1966).

In this case, there are over 1,000 potential individual claims that share the common issue of being owed backpay under 38 U.S.C. § 7454(b)(3). Compl. ¶ 20. The Government argues that "[c]ertifying the proposed class would inundate this Court with a thousand claims." Gov't Opp. at 18. But, certification of the proposed class will allow for consolidation of these claims, thereby reducing the time and expense of litigation, ensuring a consistent decision regarding the Government's liability and enabling class members with smaller damages to assert their claims. These are the very interests that RCFC 23 was created to protect. *See* FRCP 23, Advisory Committee Notes (1966) ("Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."); *see also Filosa,* 70 Fed. Cl. at 622 (given similarly situated class members, "there is little benefit to having each proposed class member retain counsel, pay filing fees, and submit duplicative pleadings"). Moreover, Plaintiffs report that "the VA has begun calculating individual back pay damages at each facility." Pl. Reply at 1. Therefore, there is no reason to think that post-2012 damages calculations will be an insurmountable burden.

Moreover, the proposed class is manageable, because individual damage calculations can be ascertained—the Government can mechanically identify and notify potential class members, as well as calculate their individual damages. *See Curry*, 81 Fed. Cl. at 338 ("The Court does not find identifying or notifying potential class members to be particularly daunting, given the records at the government's disposal.").

Given that class certification will serve the interest of judicial economy, and the fact that the proposed class is manageable, the court has determined that the "superiority requirement" has been satisfied.

**IV.    CONCLUSION.**

For the foregoing reasons, the court hereby grants Plaintiffs' September 16, 2014 Motion For Class Certification, and appoints Mr. Ira M. Lechner as Class Counsel. The opt-in class shall consist of persons who meet the following requirements:

> All General Schedule employees as defined by section 2105 of Title 5 who were not included in the class certified in *Curry v. United States*, 81 Fed. Cl. 328 (2008), and who were employed from July 1, 2012 or thereafter by the

14

Department of Veterans Affairs in the Veterans Health Administration as one of the following occupations:

(1) Series 0060, Chaplain; Series 0101, Social Science; Series 0102, Social Science Aid and Technician; Series 0181, Psychology Aid and Technician; Series 0184, Sociology; Series 0186, Social Services Aid and Assistant; Series 0187, Social Services; Series 0188, Recreation Specialist; Series 0189, Recreation Aid and Assistant; Series 0334, Computer Specialist (DHCP Operations Only); Series 0401, General Biological Science; Series 0403, Microbiology; Series 0404, Biological Science Technician; Series 0405, Pharmacology; Series 0413, Physiology; Series 0415, Toxicology; Series 0601, General Health Science; Series 0621, Nursing Assistant; Series 0622, Medical Supply Aid and Technician; Series 0625, Autopsy Assistant; Series 0636, Rehabilitation Therapy Assistant; Series 0637, Manual Arts Therapist; Series 0638, Recreation/Creative Arts Therapist; Series 0639, Education Therapist; Series 0640, Health Aid and Technician; Series 0645, Medical Technician; Series 0646, Pathology Technician; Series 0664, Restoration Technician; Series 0670, Health System Administration; Series 0671, Health System Specialist; Series 0673, Hospital Housekeeping Management; Series 0679, Medical Support Assistant; Series 0683, Dental Laboratory Aid and Technician; Series 0690, Industrial Hygienist; Series 0698, Environmental Health Aid and Technician; Series 0699, Student Nurse Technician (Title code 63 only); Series 0701, Veterinary Medical Science; Series 0704, Animal Health Technician; Series 1020, Medical Illustrator; Series 1060, Photographer (Medical); Series 1301, General Physical Science; Series 1306, Health Physics; Series 1310, Physics; Series 1311, Physical Science Technician; Series 1320, Chemistry; Series 1725, Public Health Educator; Series 1910, Quality Assurance; Series 2210, Computer Specialist (DHCP Operations Only); and

(2) who regularly and customarily worked on a tour of duty any part of which was within the period beginning midnight Friday and ending midnight Saturday (which did not include any Sunday hours); and

(3) who received premium pay of 25% or more pursuant to 38 U.S.C. § 7454(b)(3) for each such hour of service between midnight Friday and midnight Saturday; and

(4) whose "pay" during periods of authorized paid leave pursuant to Chapter 63 of Title 5 for any part of such tour of duty from midnight Friday to midnight Saturday (which did not include any Sunday hours) was reduced in amounts equal to the Saturday premium pay pursuant to 38 U.S.C. § 7454(b)(3) to which such employees would have been paid had they performed their regular and customary work on Saturdays instead of using authorized paid leave.

On or before January 31, 2015, the parties will file a joint status report indicating how this case should proceed.

Pursuant to RCFC 10(a), all subsequent pleadings in this case shall use the caption listed above.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**
